IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ALFREDO CONSTANCIO,<br><br>    Petitioner,<br><br>vs.<br><br>ROSEMARY NDOH, Warden, Avenal State Prison,[1]<br><br>    Respondent. | No. 2:16-cv-00074-JKS<br><br>ORDER<br>[Re: Motion at Docket No. 14]<br>and<br>MEMORANDUM DECISION |

Jose Alfredo Constancio, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Constancio is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Avenal State Prison. Respondent has answered. At Docket No. 14, Constancio moves to use his Petition as the Traverse. Briefing is now complete, and the case is before the undersigned judge for adjudication.

I. BACKGROUND/PRIOR PROCEEDINGS

On March 27, 2013, Constancio was charged in an amended information with two counts of engaging in oral copulation with a child 10 years of age or younger (Counts 1 and 3) and two counts of committing an act of sodomy with a child 10 years of age or younger (Counts 2 and 4). That same day, Constancio proceeded to a jury trial. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Constancio and the evidence presented at trial:

---

[1] Rosemary Ndoh, Warden, Avenal State Prison, is substituted for Scott Frauenheim, Warden, Pleasant Valley State Prison. FED. R. CIV. P. 25(c).

In early 2011, six-year-old Hailey W. was living with her family (mother, siblings and stepfather) at her stepgrandmother's house. [Constancio] also lived there, in a garage apartment. During this time, Hailey was occasionally left in [Constancio's] care, and she reported that sometimes when they were alone, [Constancio] would orally copulate and sodomize her. About that time, Hailey was diagnosed with oral herpes in the genital area, an uncommon affliction in children that may be acquired through oral contact with the genital region.

At first Hailey refrained from reporting the abuse because [Constancio] told her she would be in trouble if she told anyone. However, Hailey eventually reported the abuse to her aunt, who told Hailey's mother. Hailey's mother did not report the abuse to the police because she feared intervention by child protective services. By then, both [Constancio] and the family had moved, and the abuse had stopped. Thereafter, Hailey also informed her father of the abuse. He immediately informed the police, who interviewed Hailey. Hailey also underwent a physical examination which did not reveal any trauma; not an unusual result in children who are sexually abused. Hailey also described the abuse during SAFE (sexual assault forensic examination) interviews and at trial.

The specific acts of abuse recounted by Hailey included the following: [Constancio] told Hailey he liked her as a girlfriend and wanted to have babies with her. He repeatedly kissed her, asked her to shower with him, and placed his penis, which she referred to as his "D word," in her behind. Once, while [Constancio] had Hailey watch pornography, he licked her vagina. He also did this on another occasion while Hailey watched television. [Constancio] had also licked her neck, breasts, and belly button, and had sucked her thumb. He had ejaculated in front of her and had worn her underpants. She also reported that [Constancio] had kissed her older sister Michaela, though Michaela denied it. At trial, Hailey only recounted a single instance of oral copulation and of sodomy. However, the jury also heard Hailey's SAFE interviews, in which she stated [Constancio] had sodomized and orally copulated her on numerous occasions, and heard from other witnesses who recounted Hailey's report of multiple instances of abuse.

During motions in limine, [Constancio] objected to the admission of photographs of items recovered from the house where [Constancio] was arrested. Specifically, [Constancio] argued: "There's an issue regarding some photographs that the prosecution is seeking to introduce as evidence. [¶] In this particular instance, as the Court has been made aware of, there's [sic] some issues regarding a pair of underwear that allegedly belong to Hailey. [¶] When [defendant] was arrested there was a cylindrical device that one can, kind of in layman's terms or whatever, referred [sic] almost like a homemade sex toy. The underwear were [sic] wrapped around this object. [¶] And for obvious reasons the defense is concerned that if and when this object is introduced to the jury it would be unduly prejudicial to [Constancio] since there is no indication or allegation that Hailey at any time has viewed or seen the object. [¶] The only relevant part about the object is the underwear themselves. I just don't see how it would be beneficial to introduce the photographs, extensive and numbered photographs, wherein this object is kind of taken apart, including the underwear. [¶] I believe it would be more prejudicial

2

than probative, and for those reasons I would ask that the photos of the object itself not be allowed to be viewed by the jury."

The prosecutor argued the items were probative as corroboration of Hailey's statement, because Hailey had revealed in a forensic interview that [Constancio] had worn Hailey's underwear, and argued that the homemade sex toy with panties wrapped around it was found when [Constancio] was arrested. Hailey identified the panties as hers. A pair of shorts was also located in [Constancio's] possession, and Hailey also identified those shorts as hers. The prosecutor also argued the objects demonstrate that [Constancio's] touching of Hailey was not accidental during horseplay, but was done with sexual intent.

The court allowed the photograph of the panties alone into evidence, but stated that the probative value of the other objects was unclear and that "introduction of this cylindrical object is merely evidence of bad character or perversion," since there was no evidence it was used in any abuse of Hailey. Thus, the court ruled the photographs of those items were inadmissible. The prosecutor attempted to clarify that the court's ruling was limited to the photographs. As that was the only objection before the trial court at the time, the court clarified that its ruling was to exclude all the photographs, except a single photograph of the underwear.

Detective Lawrie testified that sheriff's deputies turned over a bag to him that contained various items that the deputies had recovered when they arrested [Constancio]. When the prosecutor began to examine the witness about the recovery of those items (the photographs of which had been excluded as noted above), defense counsel objected. The trial court conferred with counsel, outside the presence of the jury and witness, about the admissibility of the items recovered, namely a modified swim noodle sex toy, floral underwear, and pink elastic shorts. Defense counsel objected to the detective's testimony based on lack of foundation: "It's regarding foundation, Your Honor. [¶] And looking at the report, there is no indication as to what officer found [the swim noodle], where the item was found, the condition it was found. [¶] And here we are with Detective Lawrie saying ... [he] came into contact with the Defendant, and the Sheriff's Deputies who arrested him brought over some items. I don't know where those items were found. I don't know who they were found by, or any of those foundational basis [sic ]. [¶] I would object unless the proper foundation is laid. And then past the foundation, relevance of how and why we should get into these things. [¶] But first and foremost, the foundation. We don't have that foundation for him to be able to testify as to the items, where they were found, what condition they were in, and how they are linked back to [defendant]."

The prosecutor replied that the initial arrest report "indicates that [Detective Lawrie] was given this item by the Sheriff[']s Deputies, and that he was the one who later booked it into evidence, and he was the one that examined the contents inside that bag." "I don't think I—there is [sic ] any foundational requirements that I have not satisfied in the sense that this is the detective who examined the bag. [¶] He is the one [who] took the photographs. [¶] He is the one that documented the contents of the bag. He can argue chain of custody. I think it goes to its weight but not necessarily its admissibility." She argued there was an identification card bearing [Constancio's] name in the same bag

3

as the swim noodle. She averred that the deputies "went out, picked [Constancio] up, arrested him, picked up his property," and turned it all over to the detective.

However, defense counsel argued it was unclear whether the items were already in the bag, or were spread out in the residence and independently collected by the deputies. Defense counsel further argued the items were "suggestive" and "more prejudicial than probative." The trial court sustained the objection and clarified that the detective "can't offer testimony about those items until you lay a foundation of how those items were collected, who they were collected by, how they're associated with [Constancio]."

In continued examination of Detective Lawrie, the prosecutor asked whether [Constancio] had identified specific items contained in the bag as his own. After establishing that [Constancio] admitted a pair of shorts in the bag was his and that there was identification with [Constancio's] name on it in the bag, the prosecutor asked where the detective found a pair of panties. The detective responded, "[t]hat was found inside of an item. It was basically a sexual device . . . ." [Constancio] objected, and the trial court sustained the objection. The court struck the testimony and directed the jury to disregard the response. The prosecutor asked the detective whether the underwear was found in the same bag as the pink shorts [Constancio] had admitted were his, and the detective responded in the affirmative. The prosecutor then asked if the detective confronted [Constancio] with any other items, and the detective began listing them: condoms; "a 'ghost,' which was a sexual device" that is "used for sexual pleasure"; lubricant; coconut oil; condom wrappers; a smoking pipe; and a picture of a little girl. He continued to describe that the underwear "was encased in another item that was wrapped with condoms, a plastic wrapper around an item of, a foam type." At that point, defense counsel objected, and the court excused the jury to hear further argument.

Defense counsel argued the detective's testimony, other than with regard to the underwear and identification card, was inadmissible pursuant to the court's earlier ruling because there was no indication [Constancio] had acknowledged any possession or ownership of any other items. The trial court reproached the prosecutor for inquiring "about matters that [the court] had ruled had no foundation, *i.e.*, the lubricant, the condoms, the photograph of the small child, the narcotics pipe, this sexual device, device referred to as a quote, 'ghost,' " and asked "why the Court shouldn't strike that testimony, admonish the jury and warn you that you're treading on a mistrial for allowing or asking those questions of your witness contrary to a prior Court ruling?" The court explained that "[t]hose matters are unduly prejudicial without a showing that they are connected or associated with the [Constancio]." The prosecutor argued she had established foundation by showing that [Constancio] admitted ownership of at least one item in the bag and that the other items were relevant to show the sexual nature of the possession of the items.

Both counsel and the trial court discussed their differing interpretations about whether the "bag" the detective received was an evidence bag filled with items seized by the officers or was [Constancio's] bag that already held the items when the officers arrived to arrest [Constancio]. In an effort to ascertain whether the items were found in the bag, the court held a foundational hearing outside the presence of the jury. The

4

detective testified that he received some of the items in a "Ziploc type of bag," and that the bag and other items were in a larger paper bag, but he could not recall if that bag was contained in a backpack or some other type of bag. Nor was the detective aware of where within the house the various items were collected; he was merely told by sheriff's deputies that the items belonged to [Constancio].

Following the hearing, the trial court addressed the jury: "Before you were excused to the hallway, . . . you heard testimony that when [Constancio] was arrested and brought to the Police Station, that certain items were brought to the police station. [¶] The Detective mentioned a narcotics pipe, lubricant, presumably gels or lubricant used for sexual purposes, condom wrappers or condoms, an item referred to as a 'ghost' which was testified or described as a sexual device or something used for sexual pleasure, and a photograph of a small unidentified girl. [¶] Disregard all of that testimony about those items. [¶] There is no testimony, no evidence before you, that any of those items belonged to or were associated with [Constancio] in any fashion. [¶] You are not to consider that testimony in any way against [Constancio]."

The next morning of trial, the court further instructed the jury: "When I told you to disregard certain testimony where [Detective Lawrie] had described that certain items were collected that were not associated with [Constancio], you recall I told you to disregard testimony that had to do with the collection of a narcotic pipe, condoms, lubricants, a photograph of an unknown small girl, and some sort of sexual device that was referred to by Detective Lawrie. [¶] And I told you disregard that testimony and that evidence because there's nothing that demonstrates that it was associated with the defendant in any way. [¶] You may not consider that in your deliberations in any way, and I want to ask you by a show of hands right now, I need your assurance that you will not in any way consider that testimony that I told you to disregard in your deliberations. [¶] How many of you think that perhaps you can't do that, in other words, you think that you're going to go into the jury room and still consider even though I told you don't consider that. [¶] If you feel you can't separate the testimony from my instruction, raise your hand. [¶] All right. For the record, no one has raised their hand. [¶] So I'm going to ask it the opposite. If you understand what I've told you, to disregard that testimony and not let it influence your decision in this case in any way during your deliberations, if you understand and accept and respect what I just told you, raise your right hand. [¶] All right. For the record, the jury, all of the jurors and including the alternate juror have raised their right hand."

*People v. Constancio*, No. C074474, 2014 WL 5316293, at *1-4 (Cal. Ct. App. Oct. 20, 2014).

At the conclusion of trial, the jury found Constancio guilty as charged. Following pronouncement of the jury's verdict, Constancio moved for a new trial based on the prosecutor's alleged misconduct in eliciting testimony from Detective Lawrie about the "narcotics pipe, sexual lubricant, condom wrappers, condoms, a sexual device referred to as a 'white ghost,' a

5

foam water flotation device known as [a] 'swim noodle' which was fashioned in the shape of a penis, and a photograph of a small unidentified girl." The People opposed the motion. After reviewing the proceedings and chastising the prosecutor, the trial court denied Constancio's motion after finding that he suffered no prejudice because there was ample evidence of his guilt, and the court had effectively admonished the jury to disregard the testimony.

Through counsel, Constancio appealed the conviction, arguing that: 1) the prosecutor committed prejudicial misconduct warranting a mistrial when she violated a court order by eliciting inadmissible evidence from a testifying detective about the items allegedly belonging to Constancio; 2) counsel was ineffective for failing to object to the misconduct when the trial court's admonishment to the jury was incomplete; and 3) the abstract of judgment must be corrected because it did not accurately reflect the imposed sentence. Respondent agreed that the abstract of judgment should be corrected but otherwise opposed the appeal. The Court of Appeal modified the abstract of judgment but unanimously affirmed the judgment in all other respects in a reasoned, unpublished opinion issued on October 20, 2014. *Constancio*, 2014 WL 5316293, at *7. Constancio filed a counseled petition for review in the California Supreme Court requesting review of all issues unsuccessfully raised before the Court of Appeal, which was denied without comment on January 14, 2015.

Constancio then filed a *pro se* petition for habeas relief in the superior court. In that petition, he raised several challenges to his conviction based on the improper evidence heard at trial and counsel's failure to object. He also contended that counsel was ineffective for failing to

6

file a *Pitchess* motion[2] for discovery of information in a law enforcement officer's personnel file. On December 15, 2015, the Superior Court denied the petition in a reasoned, unpublished opinion. Constancio raised the same claims in *pro se* habeas petitions filed in the Court of Appeal and California Supreme Court. Those petitioners were summarily denied on January 1, 2016, and May 11, 2016, respectively.

While the state habeas petitions were pending, Constancio timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on January 18, 2016. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Constancio raises the four grounds for relief he raised in habeas petitions to the state courts. He first argues that the prosecution committed prejudicial misconduct when it elicited testimony about evidence that the trial court had already deemed inadmissible. Constancio next contends that trial counsel rendered ineffective assistance by failing to object to the trial court's defective curative instruction. Third, he avers that the trial court abused its discretion when it denied Constancio's motion for a new trial based on the allegedly-prejudicial misconduct. Finally, Constancio claims that trial counsel was ineffective for failing to file a *Pitchess* motion.

---

[2] In *Pitchess v. Superior Court*, 522 P.2d 305 (Cal. 1974), the California Supreme Court recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as a *Pitchess* motion through the enactment of California Penal Code §§ 832.7 and 832.8 and California Evidence Code §§ 1043 through 1045. *People v. Mooc*, 36 P.3d 21, 24 (Cal. 2001) (citations omitted).

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

IV. DISCUSSION

A.  Procedural Issue (Docket No. 14)

At Docket No. 14, Constancio requests that his Petition be used as the traverse, which is the reply to Respondent's answer. A petitioner is not required to file a reply in federal habeas proceedings, and the failure to file a reply does not disqualify a deserving petitioner from obtaining habeas corpus relief. *See* Rule 5, Rules Governing § 2254 Cases ("The petitioner *may* submit a reply to the respondent's answer . . . .") (emphasis added). Additionally, as with all habeas corpus cases, the Court's final decision to grant or deny the Petition is essentially a question of law based upon the legal issues already framed in the Petition, and that will be decided upon undisputed facts in the record before the Court. Respondent does not identify in

9

his answer any contested facts. Thus, any failure to file an independent traverse does not prejudice Constancio. Accordingly, the Court grants the motion at Docket No. 14 and considers the Petition at Docket No. 1 in reply to Respondent's answer.

B.      Merits of Petition

　　　　i.      Claims relating to the elicitation of inadmissible evidence (Grounds 1-3)

Constancio argues, as he did on direct appeal, that the prosecutor committed misconduct warranting a mistrial when, in contravention of a prior court order, she elicited inadmissible evidence from a testifying detective about items allegedly belonging to Constancio. He also again claims that counsel was ineffective for failing to object when the trial court's admonishment to the jury was incomplete. The Court of Appeal considered and rejected these claims as follows:

> Here, though the trial court initially precluded only the admission of the photographs of the items collected, the trial court later sustained defense counsel's objection to the prosecutor questioning the witness about the items in the bag officers turned over to Detective Lawrie because it was unclear whether the items were already in the bag when located by the officers—which would indicate they are possessed by a single individual—or collected by the officers from various parts of the residence where [Constancio] was arrested—which might indicate possession by someone other than [Constancio]. In sustaining the objection, the trial court cautioned the prosecutor that Detective Lawrie "can't offer testimony about those items until you lay a foundation of how those items were collected, who they were collected by, how they're associated with [Constancio]."
> 　　　　Thus, when the prosecutor asked Detective Lawrie about items [Constancio] admitted were his, there was no violation of the court's order because as to those items the requisite foundation tying the items to [Constancio] was established. However, when the prosecutor proceeded to elicit testimony from Detective Lawrie about the other items in the bag, she violated the court's order because as to those items, she had not established how the items were collected, by whom, or that they belonged to [Constancio]. It is irrelevant that the prosecutor apparently misunderstood the trial court's ruling requiring a foundational showing and believed instead that the presence of the items in a bag of uncertain origin with [Constancio's] identification and pink shorts was sufficient to link the rest of the items to [Constancio]. (*People v. Mills* (2010) 48 Cal.4th 158, 199.) The proper course would have been to request a clarification of the

10

court's ruling or to request a hearing outside the presence of the jury to lay a foundation for the items the court had disallowed. Her questioning of the detective to elicit testimony about the items the court had declared inadmissible, without establishing a foundation to support an argument that the items belonged to [Constancio] violated the court's prior evidentiary ruling.

However, the prosecutor's error was cured by the trial court's admonition and its subsequent inquiry to the jurors. "It is only in the exceptional case that 'the improper subject matter [of evidence] is of such a character that its effect . . . cannot be removed by the court's admonitions.' [Citation.]" (*People v. Allen* (1978) 77 Cal.App.3d 924, 935.) Thus, "[w]hen a trial court sustains defense objections and admonishes the jury to disregard the comments, we assume the jury followed the admonition and that prejudice was therefore avoided. [Citation.]" (*People v. Bennett* (2009) 45 Cal.4th 577, 595.) So too do we assume the jurors responded honestly to the court's inquiry into whether they could disregard the improperly elicited testimony. (People v. Hardy (1992) 2 Cal.4th 86, 208.)

Here, immediately after holding the foundational hearing during which it was confirmed that Detective Lawrie did not know whether the items in the bag belonged to [Constancio] (other than the items [Constancio] admitted were his), where the items were collected, or who collected them, the trial court struck the testimony and instructed the jury to disregard it. Specifically, the trial court stated: "Before you were excused to the hallway, . . . you heard testimony that when [Constancio] was arrested and brought to the Police Station, that certain items were brought to the police station. [¶] The Detective mentioned a narcotics pipe, lubricant, presumably gels or lubricant used for sexual purposes, condom wrappers or condoms, an item referred to as a 'ghost' which was testified or described as a sexual device or something used for sexual pleasure, and a photograph of a small unidentified girl. [¶] Disregard all of that testimony about those items. [¶] There is no testimony, no evidence before you, that any of those items belonged to or were associated with [Constancio] in any fashion. [¶] You are not to consider that testimony in any way against [Constancio]." The following morning, the trial court provided further instruction to the jury to disregard detective Lawrie's testimony about "the collection of a narcotic pipe, condoms, lubricants, a photograph of an unknown small girl, and some sort of sexual device . . . [¶] . . . because there's nothing that demonstrates that it was associated with the defendant in any way." The court instructed the jury not to consider that testimony or evidence in any way and then confirmed by a show of hands that every juror would disregard the testimony and not allow it to influence his or her decision.

The trial court's instructions and the jurors' confirmations that they would disregard Detective Lawrie's testimony listing the various items located in the bag he received from the officers who arrested defendant cured the error created by the prosecutor's misconduct, at least with respect to the items named by the trial court in its admonitions.

. . . .

"A defendant's conviction will not be reversed for prosecutorial misconduct ... unless it is reasonably probable that a result more favorable to the defendant would have

11

been reached without the misconduct. [Citation.]" (*Crew*, *supra*, 31 Cal.4th at p. 839; *see also* CAL. CONST., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102–1103 [state law evidentiary errors tested by *Watson* standard of prejudice].) Here, the jury heard testimony recounting the acts of oral copulation and sodomy from the victim and from the numerous individuals to whom she reported the abuse. There was additional corroborative testimony from the pediatrician who diagnosed Hailey with oral herpes in her genital region within weeks of when Hailey said the abuse was committed, which coincided with the brief period during which both she and [Constancio] lived at Hailey's stepgrandmother's house in early 2011. Thus, even in the absence of Detective Lawrie's testimony about the various items recovered from the house where defendant was staying when he was arrested, it is unlikely a jury would have come to any different conclusion but that [Constancio] was guilty of the charged crimes. Accordingly, we find [Constancio] suffered no prejudice as a result of the prosecutor's misconduct.

*Constancio*, 2014 WL 5316293, at *5-6.

      a.    *Prosecutorial misconduct* (Ground 1)

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 171 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see Bonin v. Calderon*, 59 F.3d 815, 843 (9th Cir. 1995). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer v. Miller*, 485 U.S. 756, 765 (1987) (quoting *United States v. Bagley*, 473 U.S. 667 (1985)). Under this standard, a petitioner must show there is a reasonable probability the error complained of affected the outcome of the trial—*i.e.*, that absent the alleged impropriety, the verdict probably would have been different.

With respect to a prosecutor's solicitation of inadmissible evidence, the admission of evidence in a state criminal proceeding is not subject to federal habeas review unless a specific federal constitutional guarantee is violated or the error is of such magnitude that the result is a denial of fundamental due process and the right to a fair trial. *See Estelle*, 502 U.S. at 67; *Colley*

12

*v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1984); *Jefferies v. Blodgett*, 5 F.3d 1180, 1192 (9th Cir. 1993). State law foundational and admissibility questions raise no federal question. *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir.1995). Since this ground for relief pertains to an issue of evidentiary error, Constancio fails to raise a federal question as required for federal habeas review.

Nonetheless, in *Payne v. Tennessee*, the Supreme Court stated that if evidence introduced at a criminal trial "is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 170–83 (1986)). Again, *Darden* provides that the "relevant question" is whether admission of the challenged evidence "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181; *Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) ("The relevant question in this case . . . is whether the admission of evidence regarding petitioner's prior death sentence so infected the sentencing proceeding with unfairness as to render the jury's imposition of the death penalty a denial of due process").

Under all the circumstances of this case, the Court agrees with Respondent that reasonable jurists could have concluded, as did the state courts, that the prosecutor's misunderstanding of the court's prior order and subsequent elicitation of inadmissible evidence, even if properly considered misconduct, were not "of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer*, 485 U.S. at 765. Moreover, in light of the admonishments given and the overwhelming evidence against him, any such misconduct was harmless in that it did not have a "substantial and injurious" effect on the outcome of the trial.

*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Accordingly, no federal due process violation occurred, and Constancio is not entitled to relief.

      b.  *Ineffective assistance–failure to object to admonition* (Ground 2)

To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that appellate counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Constancio must show that counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

The Court of Appeal rejected Constancio's ineffective assistance claim on direct appeal as follows:

> [Constancio] claims that because the foam sex toy was omitted from the trial court's admonitions, defense counsel rendered ineffective assistance in failing to object further. To prevail on that theory, he must show (1) counsel's performance was deficient, falling below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance resulted in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 691–692 [80 L.Ed.2d 674, 693–694, 696]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) That is, "there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*People v. Kelly* (1992) 1 Cal.4th 495, 520.) "'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."' [Citations.] '[W]e accord great deference to counsel's tactical decisions' [citation], and we have explained that 'courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight' [citation]. 'Tactical errors are generally not deemed reversible, and counsel's decisionmaking must be evaluated in the context of the available facts.'" (*People v. Weaver* (2001) 26 Cal.4th 876, 925–926.)
> 
> While it is true that the trial court's first admonition omitted reference to the modified swim noodle and only referred to the "ghost" sex toy, the trial court's second admonition referred generically to a "sexual device." Thus, the trial court's admonition addressed the entirety of Detective Lawrie's testimony, and the jury affirmatively indicated that it would disregard all of Detective Lawrie's testimony describing the items found in the bag. Additionally, a further objection and request for admonition as to the foam item would have served only to highlight this testimony. Counsel's failure to object may have been a wise tactical decision. Thus, we cannot conclude counsel's performance was deficient. Moreover, as stated below, we find no prejudice resulted

15

> from the jury's hearing Detective Lawrie's testimony about the items. Therefore, we find
> defense counsel did not render ineffective assistance in failing to object to the trial
> court's admonitions as incomplete.

*Constancio*, 2014 WL 5316293, at *6.

Constancio fares no better on federal habeas review. The determination of the Court of Appeal is both reasonable and fully supported by the record. Constancio is not entitled to relief on this claim.

        c.      *Trial court error–failure to grant a new trial* (Ground 3)

Constancio relatedly claims that the trial court should have granted a new trial as a result of the improper testimony. Generally, the drastic remedy of a new trial should not be granted where the prejudice from improperly admitted evidence is not substantial and where curative instructions can mitigate the harm. *See, e.g.*, *United States v. Browne*, 829 F.2d 760, 766 (9th Cir. 1987). Under California law, a trial court has broad discretion to grant a mistrial. *See People v. Williams*, 148 P.3d 47, 72 (Cal. 2007).

As an initial matter, it appears that this claim may be procedurally defaulted on federal habeas review. As a general rule, a federal court will not review a claim if the state court's rejection of the claim rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Here, the superior court found the claim to be barred because it could have been, but was not, raised on direct appeal. *See In re Dixon*, 264 P.2d 513, 514 (Cal. 1953) ("The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constitu[t]ing an excuse for failure to employ that remedy, the writ will not lie where the claimed error could have been, but were not, raised upon a timely appeal from a judgment of

conviction."); *see also In re Seaton*, 95 P.3d 896, 901 n.4 (Cal. 2004) ("What we mean when we invoke the *Dixon* bar is that the claim is *based on the appellate record*, and thus was fully cognizable on appeal insofar as it was preserved at trial."). While the Ninth Circuit has not explicitly found that a *Dixon* default is an independent and adequate state law ground, it has indicated that it is likely to do so with respect to the time period at issue here. *See Bennett v. Mueller*, 322 F.3d 573, 580-86 (9th Cir. 2003) (suggesting in dicta that *Dixon* rule would constitute an independent and adequate state-law ground when applied after the California Supreme Court's 1998 decision in *In re Robbins*, 959 P.2d 311 (Cal. 1998)); *see also Flores v. Roe*, 228 F. App'x 690, 691 (9th Cir. 2007) (finding claim procedurally barred based on *Dixon*); *cf. Park v. California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000) (holding that *Dixon* bar was not independent state law ground prior to *Robbins*). Some courts in this district have accordingly concluded that habeas review is foreclosed when the petitioner has failed to place the adequacy of the *Dixon* rule at issue and has not shown cause and prejudice or that a miscarriage of justice would result if the claim were not heard. *See, e.g.*, *Stribling v. Grounds*, No. 12-cv-3084, 2013 WL 5817668, at *4-5 (E.D. Cal. Oct. 29, 2013); *Cantrell v. Evans*, No. 07-cv-1440, 2010 WL 1170063, at *13-14 (E.D. Cal. Mar. 24, 2010).

It is unnecessary, however, for this Court to decide whether a procedural bar exists here because, even assuming that such bar does not exist, Constancio is not entitled to relief in any event. To the extent that Constancio is alleging a violation of state law in the court's denial of his mistrial motion, his claim is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68. But to the extent that he is alleging a federal due process violation from the prejudicial effect of the testimony, he has raised a cognizable federal claim. In order to establish a due

17

process violation from an alleged error, such as the denial of a mistrial motion, a habeas petitioner must show that the error resulted in a trial that was fundamentally unfair. *See id.* at 70-71, 75; *Hayes v. Ayers*, 632 F.3d 500, 515 (9th Cir. 2011). The Supreme Court has defined the category of infractions that violate fundamental fairness very narrowly. *See Estelle*, 502 U.S. at 73.

Here, the improper testimony did not render Constancio's trial fundamentally unfair because, again, the trial court took appropriate corrective action by striking the testimony and instructing the jury to disregard any testimony that was stricken. It is presumed that the jurors followed the trial court's instructions. *See Weeks*, 528 U.S. at 234; *see also Hayes*, 632 F.3d at 515 (finding no due process violation from denial of mistrial based on witness's testimony that petitioner had hired someone to murder her, where the trial court sustained an objection and ordered the jury to disregard it). Moreover, as aforementioned, substantial independent evidence exists to support the jury's verdict. It is therefore not likely that the improper statements affected the verdict. *See United States v. Aichele*, 941 F.2d 761, 765 (9th Cir. 1991) (holding, in case affirming the denial of a mistrial where testimony concerning a defendant's prior incarceration was erroneously introduced, that, "[i]f the case against a defendant is very strong, though not overwhelming, and the reviewing court is unconvinced that the admission of the evidence influenced the outcome of the case, the court may uphold the verdict"). Accordingly, Constancio is not entitled to relief on this claim either.

ii. Freestanding ineffective assistance claim–*Pitchess* motion (Ground 4)

Finally, Constancio faults trial counsel for failing to file a *Pitchess* motion seeking discovery of a law enforcement officer's file. According to Constancio, counsel should have made such motion regarding the investigative officer's history of fabricating evidence.

In *Pitchess*, the California Supreme Court held that a criminal defendant is entitled to discover an officer's personnel records if the information contained in them is relevant to his ability to defend against the charge. *Pitchess*, 522 P.2d at 309. To obtain disclosure of police personnel records, a defendant must submit affidavits establishing "good cause." CAL. EVID. CODE § 1043(b)(3); *Warrick v. Superior Court*, 112 P.3d 2, 6 (Cal. 2005). Good cause exists when the defendant demonstrates (1) materiality of the requested material to the subject matter of the pending action, and (2) a reasonable belief the agency has the type of information sought. CAL. EVID. CODE § 1043(b)(3); *Warrick*, 112 P.3d at 10. If a defendant meets the requisite standard, the trial court conducts an *in camera* review of the records to determine if they are relevant. *See* CAL. EVID. CODE § 1045.

As the superior court reasonably determined in rejecting Constancio's claim on state habeas review, Constancio "has not shown what might have been discovered if counsel had filed a *Pitchess* motion." As that court reasoned:

> Indeed, Petitioner has not even shown that the request is relevant to his defense. The record reflects that the theory at trial, and the trial court's stated reason for excluding most of the items, was that there was no connection between the items and Petitioner. While there was some evidence connecting the swim noodle to Petitioner, it was excluded because there was no evidence it was connected to the offense. Thus, the defense theory was not that the officer fabricated the evidence. Rather, the defense was that the items were not relevant to the prosecution. As such, Petitioner has not shown that his bald allegation that counsel should have filed a *Pitchess* motion was consistent or relevant to his defense.

19

The superior court's determination was both reasonable and fully supported by the record. Consequently, Constancio fails to show that counsel was deficient or that he was prejudiced by the omission. Constancio is therefore not entitled to relief on this claim.

V. CONCLUSION AND ORDER

Constancio may use his Petition in place of a reply, but he is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the motion at Docket No. 14 is **GRANTED**.

**IT IS FURTHER ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 16, 2018.

                                         /s/James K. Singleton, Jr.
                                         JAMES K. SINGLETON, JR.
                                         Senior United States District Judge